Copy

Recording Requested By/Return To:
**NATIONSTAR MORTGAGE LLC**
**D/B/A MR. COOPER**
**999 TECH ROW, #200**
**MADISON HEIGHTS, MICHIGAN**
**48071**
**888-480-2432**

This Instrument Prepared By:
**NATIONSTAR MORTGAGE LLC**
**D/B/A MR. COOPER**
**8950 CYPRESS WATERS BLVD.**
**COPPELL, TX 75019**

**Parcel Identification Number: 31-00-17338-127**

———————————————— [Space Above This Line For Recording Data] ————————————————

**Document Date: 06-15-2021**

# HOME AFFORDABLE MODIFICATION AGREEMENT

**Property Address: 323 ROSS CT,**
**WYNCOTE, PENNSYLVANIA 19095**

Loan Number ▮▮▮▮
FHA Case Number ▮▮▮▮

This Loan Modification Agreement ("Agreement"), effective on **1ST DAY OF AUGUST, 2021**, between **DOREEN D WORKMAN** ("Borrower"), and **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER** ("Lender"), whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **NOVEMBER 29, 2017** and recorded in **RECORDED DATE : 12/13/2017 BOOK : 14454 PAGE : 01786 INSTRUMENT NUMBER : 2017093963** and (2) the Note in the original principal sum of U.S $206,097.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**323 ROSS CT, WYNCOTE, PENNSYLVANIA 19095**
(Property Address)

the real property described being set forth as follows:
**LEGAL DESCRIPTION:**
**ALL THAT CERTAIN UNIT OF PIECE OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS ERECTED OR TO BE ERECTED THEREON, SITUATE IN THE TOWNSHIP OF CHELTENHAM,**

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

*(page 1 of 10)*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Copy

Loan Number ▓▓▓▓

**COUNTY OF MONTGOMERY, COMMONWEALTH OF PENNSYLVANIA, BEING A PART OF
"WYNGATE, A PLANNED COMMUNITY", A DECLARATION THEREOF BEING DATED 6/16/2008
AND RECORDED 6/23/2008 IN DEED BOOK 5697 PAGE 643, BOUNDED AND DESCRIBED
ACCORDING TO A DECLARATION PLAT ENTITLED "WYNGATE, A PLANNED COMMUNITY",
DRAWN BY TAYLOR WISEMAN AND TAYLOR ENGINEERING/ SURVEYORS/ SCIENTISTS,
CHALFONT, PENNSYLVANIA, AS AN EXHIBIT TO THE FIFTH AMENDMENT THERETO THE
DECLARATION OF WYNGATE, A PLANNED COMMUNITY, BY THE FAIRWAYS AT
CEDARBROOK HILLS, L.P., A PENNSYLVANIA LIMITED PARTNERSHIP, THE DECLARANT,
DATED 1/17/2013 AND RECORDED 1/25/2013 AT NORRISTOWN, PENNSYLVANIA IN DEED
BOOK 5862 PAGE 937.**
Modification Effective Date: **AUGUST 01, 2021**
**Original Mortgage Amount: $206,097.00**

**Tax Parcel No.:** ▓▓▓▓▓

If my representations and covenants in Section 1 continue to be true in all material respects, then this
Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Security Instrument on the Property, and (2) the Promissory Note secured by the
Security Instrument ("Original Note"). The Security Instrument and Original Note together, as they may
previously have been amended, are referred to as the "Loan Documents." Except for "Subordinate
Note" and "Subordinate Security Instrument", capitalized terms used in this Agreement and not
defined have the meaning given to them in Loan Documents.

I understand that after I sign and return the Subordinate Note, Subordinate Security Instrument, and
two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.
This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

      A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the
             Loan Documents or my default is imminent, and (ii) I do not have sufficient income or
             access to sufficient liquid assets to cure the default or to make the monthly mortgage
             payments now or in the near future;

      B.    One of the borrowers signing this Agreement, the Subordinate Note, and the
             Subordinate Security Instrument lives in the Property as a principal residence, and the
             Property has not been condemned;

      C.    There has been no impermissible change in the ownership of the Property since I
             signed the Loan Documents. A permissible change would be any transfer that the
             Lender is required by law to allow, such as a transfer to add or remove a family
             member, spouse or domestic partner of the undersigned in the event of a death,
             divorce or marriage;

      D.    I have provided documentation for all income that I receive (and I understand that I
             am not required to disclose child support or alimony unless I chose to rely on such
             income when requesting to qualify for the FHA Home Affordable Modification Program
             (the "Program").

Copy

Loan Number ▇▇▇▇▇▇

E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.   I have made or will make all payments required under a trial period plan.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified, this Agreement will terminate, and the Subordinate Note and Subordinate Security Instrument will not be in effect. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **AUGUST 01, 2021** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **AUGUST 01, 2021.**

A.   The Maturity Date will be: **JULY 01, 2051.**

B.   The current Total Outstanding Balance of my loan includes all unpaid principal and amounts that will be past due as of the Modification Effective Date. The current Total Outstanding Balance of my Original Note includes unpaid principal, unpaid and deferred interest, escrow advances and other costs, but excludes unpaid late charges, and is less any amounts paid to the Lender but not previously credited to my Loan. The current Total Outstanding Balance of my loan is **$196,673.85.**

C.   The Total Outstanding Balance will be reduced by **$49,891.98.** This amount will be included in a new, non-interest bearing Subordinate Note ("Subordinate Note"), payable to HUD, and will not be due until the Original Note is paid off, matures, or I sell the property, whichever is earliest.

D.   The Total Outstanding Balance less the amount of the Subordinate Note, or **$146,781.87,** will be the New Principal Balance of my Original Note. Interest at the rate of **2.8750%** will

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

Copy

Loan Number [ ▮▮▮▮▮ ]

begin to accrue on the New Principal Balance as of **AUGUST 01, 2021** and the first new monthly payment on the New Principal Balance will be due on **AUGUST 01, 2021**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 30 | 2.8750% | 07-01-2021 | $815.99 | $1,022.11, may adjust periodically | $1,838.10, may adjust periodically | 08-01-2021 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.D. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate or for a graduated or growing-equity payment schedule.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

E. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

F. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.D.

G. I agree to pay in full the Subordinate Note and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay all amounts due and owing under the Original Note, including any subsequent modifications to the Original Note, or (iii) the new Maturity Date set forth in Section 3.A above.

4.   **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, the Subordinate Note, and the Subordinate Security Instrument, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

Copy

**Loan Number** ▮▮▮▮▮▮▮

borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement, the Subordinate Note, and the Subordinate Security Instrument shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, the Subordinate Note, and the Subordinate Security Instrument, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed. The Loan Documents constitute a first lien on the Property and are in no way prejudiced by this Agreement.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, the Subordinate Note, and the Subordinate Security Instrument, remain in full force and effect; nothing in this Agreement or the Subordinate Note, or the Subordinate Security Instrument shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Subordinate Note, and the Subordinate Security Instrument, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That the mortgage insurance premiums on my loan may increase and the date on which I may request cancellation of mortgage insurance may change as a result of this loan modification.

.

Copy

Loan Number ███████

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Subordinate Security Instrument. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Original Note or in any addendum or amendment to the Original Note allowed for the assessment of a penalty for full or partial prepayment of the Original Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That, if any foreclosure action against me is dismissed as a result of entering into this Agreement, I will remain liable for and bear my own attorney fees and costs incurred in connection with such action, if permitted by applicable law.

M. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the FHA Home Affordable Modification Program.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to

Copy

Loan Number ▮▮▮▮▮▮

execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

5.  If I have been granted a discharge in bankruptcy with respect to the Original Note and Security Instrument prior to the execution of this Agreement nothing in this Agreement shall be construed to be an attempt to collect any discharged debt against me personally or an attempt to revive personal liability. However, I acknowledge that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of my default thereunder.

6.  If I am a Debtor in an active bankruptcy proceeding, I understand that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If Court and/or Bankruptcy Trustee approval of the loan modification is required, the loan modification agreement will not be effective unless evidence of the required approval is provided.

**(SIGNATURES CONTINUE ON FOLLOWING PAGES)**

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

Copy

Loan Number █████████

In Witness Whereof, the Borrower(s) have executed this agreement.

*Doreen D. Workman*                              Execution Date: 6, 17, 2021

Borrower -    **DOREEN D WORKMAN**

State of **PENNSYLVANIA** ,
County of _Philadelphia_
Enter County Here

On this, the _17th_ day of _June_ , _2021_ , before me,
the undersigned officer, personally appeared **DOREEN D WORKMAN**, known to me (or satisfactorily proven) to
be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they
executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

Place Seal Below

_Patricia A Ireland_
Notary Signature

_Patricia  A  Ireland_
Notary Printed Name

Title of Officer:  Notary Public

My Commission Expires: _4·24·24_

[ ] This notarial act involved the use of communication technology.

Commonwealth of Pennsylvania - Notary Seal
PATRICIA A IRELAND - Notary Public
Philadelphia County
My Commission Expires Apr 24, 2024
Commission Number 1077269

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

*(page 8 of 10)*

Copy

Loan Number ███████

In Witness Whereof, the Lender has executed this Agreement.

Lender

**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**

By: _____

Printed Name: Bria Brown
Vice President

Title: _____

JUN 2 2 2021

Execution Date: _____

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

*(page 9 of 10)*

Copy

Loan Number [REDACTED]

State of MICHIGAN
County of OAKLAND

Acknowledged by _____ **Bria Brown** _____, Vice President of Nationstar
Mortgage LLC d/b/a Mr. Cooper a Limited Liability Corporation before me on the _22nd_ day of
_____ June _____, _2021_

Signature _____

Printed name __ **K Otto** __

Notary public, State of MICHIGAN, County of __ Macomb __

My commission expires __ MAY 1 6 2027 __

Acting in the County of OAKLAND

> K OTTO
> Notary Public, State Of Michigan
> County of Macomb
> My Commission Expires May 16, 2027
> Acting in the County of OAKLAND

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

*(page 10 of 10)*