IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Doreen D. Workman<br>　　　Debtor, | BANKRUPTCY CASE NUMBER<br>20-12737-amc |
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>　　　Movant.<br>v. | CHAPTER 13 |
| | 11 U.S.C. § 362 |
| Doreen D. Workman<br>　　　Debtor/Respondent, | Hearing Date and Time: March 30, 2022 at 11:00 a.m. |
| Scott Waterman, Trustee<br>　　　Additional Respondent. | Courtroom # 4 - Philadelphia Division/Nix<br>Building |

## MOTION OF NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER FOR RELIEF FROM THE AUTOMATIC STAY UNDER SECTION §362 (d)

Secured Creditor, Nationstar Mortgage LLC d/b/a Mr. Cooper ("Movant"), by and through its undersigned counsel, pursuant to 11 U.S.C. §362, hereby seeks relief from the automatic stay to exercise and enforce its rights, without limitation, with respect to certain real property.  In support of this motion, Movant avers as follows:

1.　　　Debtor named above filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code in the Eastern District of Pennsylvania under the above case number.

2.　　　Movant is the holder of a secured claim against Debtor, secured only by a first mortgage lien on real estate which is the principle residence of Debtor located at 323 Ross Court, Wyncote, PA 19095 (the "Mortgaged Premises").

3.　　　Nationstar Mortgage LLC d/b/a Mr. Cooper services the loan on the property referenced in this motion for relief.  In the event the automatic stay in this case is modified, this case dismisses and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Nationstar Mortgage LLC d/b/a Mr. Cooper.

4.　　　Nationstar Mortgage LLC d/b/a Mr. Cooper, directly or through an agent, has possession of the promissory note.  The promissory note is either made payable to Noteholder or has been duly indorsed in blank.  Noteholder is the original mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

5.　　　The filing of the aforesaid Petition operated as an automatic stay under Section 362(a) of the Bankruptcy Code of proceedings by Movant to foreclose on the Mortgaged

Premises.  Movant requests relief from the automatic stay to continue with the filed mortgage foreclosure action, if any, and to take the necessary action to obtain the Mortgaged Premises.

6.      Additional Respondent is the Standing Trustee appointed in this Chapter 13 proceeding.

7.      Debtor has not claimed an exemption in the subject property.

8.      Debtor has failed to make all post-petition monthly mortgage payments.

9.      The defaults include the failure to make the following monthly payments:

| | |
|---|---|
| Payments of $1,722.94 from November 1, 2021 through February 1, 2022 | $6,891.76 |
| Suspense Balance | $(627.08) |
| The total amount due | $6,264.68 |

10.     The Fair Market Value of the Mortgaged Premises is $230,000.00, as per Debtor Schedules.  The approximate amount necessary to payoff the loan is $203,769.32 good through February 7, 2022.  The breakdown of the payoff is as follows:

| | |
|---|---|
| Principal Balance | $195,636.99 |
| Accrued Interest | $1,967.30 |
| Escrow Advance | $6,042.11 |
| Corporate Advance | $750.00 |
| Suspense Balance | ($627.08) |

11.     Movant's interests are being immediately and irreparably harmed.  Movant is entitled to relief, from the automatic stay, pursuant to either 11 U.S.C. § 362 (d)(1) or (d)(2), because of the foregoing default and because:

    a)      Movant lacks adequate protection for its interests in the Mortgaged Premises;

    b)      Debtor has little, if any, equity in the Mortgaged Premises; and

    c)      The Mortgaged Premises are not necessary to an effective reorganization or plan.

12.     Movant requests that the Court waive Rule 4001(a)(3), permitting Movant to immediately implement and enforce the Court's order.

13.     Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts,

contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

WHEREFORE, Movant respectfully moves this Court for an Order (i) granting Movant relief from the automatic stay to foreclose upon and to otherwise exercise and enforce its rights with respect to the Mortgaged Premises, (ii) awarding reasonable attorneys' fees incurred in the preparation and presentation of this motion, and (iii) granting all such other and further relief as the Court deems appropriate and necessary.

Respectfully submitted,

Dated: 02/22/2022

BY: /s/ Lily C. Calkins
Christopher A. DeNardo 78447
Kristen D. Little 79992
Lily C. Calkins 327356
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150
King of Prussia, PA 19406
(610) 278-6800
logsecf@logs.com

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: Doreen D. Workman
      Debtor,

Nationstar Mortgage LLC d/b/a Mr. Cooper
      Movant.

v.

Doreen D. Workman
      Debtor/Respondent,

Scott Waterman, Trustee
      Additional Respondent.

BANKRUPTCY CASE NUMBER
20-12737-amc

CHAPTER 13

11 U.S.C. § 362

Hearing Date and Time: March 30, 2022 at 11:00 a.m.

Courtroom # 4 - Philadelphia Division/Nix Building

**O R D E R**

AND NOW, this _____ day of _____, 2022, at the Eastern District of Pennsylvania, upon the consideration of the Motion of Movant for Relief from the Automatic Stay (the "Motion"), and the failure of Debtor to file an answer, appear or otherwise respond to the Motion, and for good cause shown, it is

ORDERED AND DECREED that the Automatic Stay of all proceedings, as provided under Section 362 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Code"), 11 U.S.C. § 362, is lifted to allow Movant, or its successors, if any, to proceed with its rights under its loan documents for the property located at 323 Ross Court, Wyncote, PA 19095; and it is

FURTHER ORDERED that Rule 4001(a)(3) is not applicable and Movant, or its successors, if any, may immediately implement this order.

BY THE COURT:

_____
HONORABLE ASHELY M. CHAN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Doreen D. Workman<br>Debtor, | BANKRUPTCY CASE NUMBER<br>20-12737-amc |
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>Movant.<br>v. | CHAPTER 13 |
| | 11 U.S.C. § 362 |
| Doreen D. Workman<br>Debtor/Respondent, | Hearing Date and Time: March 30, 2022 at 11:00 AM |
| Scott Waterman, Trustee<br>Additional Respondent. | Courtroom # 4 - Philadelphia Division/Nix<br>Building |

## **CERTIFICATE OF SERVICE**

I, ___Lily C. Calkins_____, an employee of the law firm of LOGS Legal Group LLP
hereby certify that I caused to be served true and correct copies of the Motion and Notice of
Motion, Response Deadline and Hearing Date by First Class Mail, postage prepaid, at the
respective last known address of each person set forth below on this ___22nd_____ day of _____
February_____, 2022:

Doreen D. Workman
323 Ross Court
Wyncote, PA 19095

Zachary Perlick, Esquire
1420 Walnut Street
Suite 718
Philadelphia, PA 19102
perlick@verizon.net - VIA ECF

Scott Waterman, Trustee
Chapter 13 Trustee
2901 St. Lawrence Avenue, Suite 100
Reading, PA 19606
ecfmail@reeadingch13.com - VIA ECF

United States Trustee
Sent via electronic notification ustpregion03.ph.ecf@usdoj.gov


I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT.

/s/ Lily C. Calkins

Christopher A. DeNardo 78447
Kristen D. Little 79992
Lily C. Calkins 327356
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150
King of Prussia, PA 19406
(610) 278-6800
logsecf@logs.com

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Doreen D. Workman<br>        Debtor, | BANKRUPTCY CASE NUMBER<br>20-12737-amc |
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>        Movant.<br>v. | CHAPTER 13 |
| Doreen D. Workman<br>        Debtor/Respondent, | |
| Scott Waterman, Trustee<br>        Additional Respondent. | |

### NOTICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE

Nationstar Mortgage LLC d/b/a Mr. Cooper has filed a Motion for Relief, with the Court for relief from the automatic stay.

1.      **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult an attorney.)**

2.      If you do not want the court to grant the relief sought in the Motion or if you want the court to consider your views on the Motion, then on or before ____March 11, 2022____ you or your attorney file a response to the Motion.

(a)      **If you are required to file documents electronically by Local Bankruptcy Rule 5005-1**, you must file your response electronically.

(b)      **If you are not required to file electronically,** you must file your response at: United States Bankruptcy Court, Robert N.C. Nix, Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA 19107.

(c)      **If you mail your Response** to the bankruptcy clerk's office for filing, you must mail it early enough so that it will be received on or before the date stated above

(d)      On the same day that you file or mail your Response to the Motion, you must mail or deliver a copy of the Response to the Movant's attorney:
Christopher A. DeNardo 78447
Kristen D. Little 79992
Lily C. Calkins 327356
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150, King of Prussia, PA 19406

Phone: (610) 278-6800
Fax: (847) 954-4809

3.      A hearing on the motion is scheduled to be held before the HONORABLE
ASHELY M. CHAN on March 30, 2022 at 11:00 a.m. in Courtroom # 4 - Philadelphia
Division/Nix Building, United States Bankruptcy Court, Robert N.C. Nix, Sr. Federal
Courthouse, 900 Market Street, Philadelphia, PA 19107.

4.      **If you do not file a response to the Motion,** the court may cancel the hearing
and enter an Order granting the relief requested in the Motion.

5.      If a copy of the motion is not enclosed, a copy of the motion will be provided to
you if you request a copy from the attorney named in paragraph 1(b).

6.      You may contact the Bankruptcy Clerk's office at (215) 408-2800 to find out
whether the hearing has been canceled because no one filed a response.

Date:  02/22/2022

Pennsylvania

# NOTE

November 29, 2017
[Date]

WYNCOTE, PENNSYLVANIA
[City, State]

### 323 ROSS COURT
### WYNCOTE, PENNSYLVANIA 19095
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $206,097.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **MORTGAGE ONE SOLUTIONS, INC.**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

, Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on **January 1, 2018**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on **December 1, 2047**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at

### MORTGAGE ONE SOLUTIONS, INC.
### 8609 WESTWOOD CENTER DR. ST. 200
### VIENNA, VIRGINIA 22182

or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,090.68.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded

PENNSYLVANIA FHA Fixed Rate Note

Page 1 of 3

1/2015-b

IDS, Inc.

Borrower(s) Initials

permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;

(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) the Maturity Date as defined in this Note;

(e) the entry of any judgment against me under this Note; and

(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**DOREEN D WORKMAN**                -Borrower

_____ (Seal)
                                    -Borrower
                              *[Sign Original Only]*

Loan originator (organization): **MORTGAGE ONE SOLUTIONS, INC.**; NMLS #: ▮
Loan originator (individual): **PENNY ELAYNE KEATOR**; NMLS #▮

**Pay to the Order of**

Without Recourse
**Pacific Union Financial, LLC**

*Andy Peach*

Andy Peach, Executive Vice President

# ALLONGE

BORROWER (S): DOREEN D WORKMAN

PROPERTY ADDRESS: 323 ROSS COURT WYNCOTE, PENNSYLVANIA 19095

NOTE AMOUNT: $206,097.00

LOAN DATE: NOVEMBER 29, 2017

*PAY TO THE ORDER OF*

PACIFIC UNION FINANCIAL LLC

WITHOUT RECOURSE

COMPANY NAME: MORTGAGE ONE SOLUTIONS, INC.

AUTHORIZED SIGNATURE:

PRINTED NAME AND TITLE OF AUTHORIZED SIGNER:  BILLY J. FLEMING, EVP
POA, SOUTHSTAR BANK, S.S.B.

 



MTG BK 14454 PG 01786 to 01808
INSTRUMENT # : 2017093963
RECORDED DATE: 12/13/2017 01:23:57 PM

**RECORDER OF DEEDS**
**MONTGOMERY COUNTY**
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 23 |
|---|---|

| | | | |
|---|---|---|---|
| **Document Type:** | Mortgage | **Transaction #:** | 3675978 - 3 Doc(s) |
| **Document Date:** | 11/29/2017 | **Document Page Count:** | 22 |
| **Reference Info:** | | **Operator Id:** | estaglia |
| **RETURN TO:** (Simplifile) | | **PAID BY:** | |
| Sienna Abstract | | SIENNA ABSTRACT | |
| 602 CORPORATE DR W | | | |
| LANGHORNE, PA 19047 | | | |
| (215) 579-4740 | | | |
| **\* PROPERTY DATA** | | | |
| Parcel ID #: | ▓▓▓▓▓ | | |
| Address: | 323 ROSS CT | | |
| | PA | | |
| Municipality: | Cheltenham Township (100%) | | |
| School District: | Cheltenham | | |
| **\* ASSOCIATED DOCUMENT(S):** | | | |

| | | |
|---|---|---|
| **FEES / TAXES:** | | MTG BK 14454 PG 01786 to 01808 |
| Recording Fee:Mortgage | $86.75 | Recorded Date: 12/13/2017 01:23:57 PM |
| Additional Pages Fee | $36.00 | |
| Affordable Housing Pages | $36.00 | I hereby CERTIFY that this document is |
| **Total:** | $158.75 | recorded in the Recorder of Deeds Office in |
| | | Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
**NOTE: If document data differs from cover sheet, document data always supersedes.**
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
31-00-17336-12-7   CHELTENHAM TOWNSHIP
323 ROSS CT
FAIRWAYS AT CEDARBROOK HILLS LP                    $15.00
B 146A L 2905 U 081 1101 12/13/2017                 LG

This instrument was prepared by:
**MORTGAGE ONE SOLUTIONS, INC.**
**8609 WESTWOOD CENTER DR. ST. 200**
**VIENNA, VIRGINIA 22182**
**703-992-0142**

WHEN RECORDED, MAIL TO:
**MORTGAGE ONE SOLUTIONS, INC.**
**8609 WESTWOOD CENTER DR. ST. 200**
**VIENNA, VIRGINIA 22182**

UPI Number

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **November 29, 2017**, together
with all Riders to this document.

**(B) "Borrower"** is **DOREEN D WORKMAN, A SINGLE WOMAN**. Borrower is the mortgagor
under this Security Instrument.

**(C) "MERS"** is **Mortgage Electronic Registration Systems, Inc.** MERS is a separate corporation
that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the
mortgagee under this Security Instrument.** MERS is organized and existing under the laws of
**Delaware**, and has a mailing address of **P.O. Box 2026, Flint, MICHIGAN 48501-2026**, and a
street address of **1901 E Voorhees Street, Suite C, Danville, ILLINOIS 61834**. The MERS
telephone number is **(888) 679-MERS**.

**(D) "Lender"** is **MORTGAGE ONE SOLUTIONS, INC.**, organized and existing under the laws
of **VIRGINIA**.

FHA Pennsylvania Mortgage with MERS                                                        1/2015 (rev. 7/2016)

IDS, Inc. - 59486                          Page 1 of 19                    Borrower(s) Initials _____

12/13/2017 01:23:57 PM              MTG BK 14454      PG 01788                    MONTCO

Lender's address is **8609 WESTWOOD CENTER DR. ST. 200, VIENNA, VIRGINIA 22182.**

**(E) "Note"** means the promissory note signed by Borrower and dated **November 29, 2017.** The Note states that Borrower owes Lender **TWO HUNDRED SIX THOUSAND NINETY-SEVEN AND NO/100** Dollars (U.S. **$206,097.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2047.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider        ☐ Condominium Rider        ☒ Planned Unit Development Rider
☐ Other(s) [specify]:

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

12/13/2017 01:23:57 PM                    MTG BK 14454        PG 01789                                      MONTCO

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County of **MONTGOMERY**:

**SEE ATTACHED LEGAL DESCRIPTION**

which currently has the address of: **323 ROSS COURT**
                                    **WYNCOTE, PENNSYLVANIA 19095**
                                    ("Property Address")

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

FHA Pennsylvania Mortgage with MERS                    Page 3 of 19                              1/2015 (rev. 7/2016)

IDS, Inc. - 59486                                                                    Borrower(s) Initials _____

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of

current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

12/13/2017 01:23:57 PM          MTG  BK 14454    PG 01793                    MONTCO

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's

satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

FHA Pennsylvania Mortgage with MERS                                                          1/2015 (rev. 7/2016)

IOS, Inc. - 59486                                        Page 9 of 19                  Borrower(s) Initials

12/13/2017 01:23:57 PM                    MTG BK 14454    PG 01796                    MONTCO

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given,

12/13/2017 01:23:57 PM                    MTG  BK 14454    PG 01797                              MONTCO

Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bonnd.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the

12/13/2017 01:23:57 PM                    MTG BK 14454      PG 01799                              MONTCO

Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that

Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

FHA Pennsylvania Mortgage with MERS                                                                1/2015 (rev. 7/2016)

IDS, Inc. - 59486                                      Page 14 of 19                    Borrower(s) Initials _____

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform**

Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. **Release**. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers**. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period**. Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage**. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Effect of Survival Events**. Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 3 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;

(i) pay the fees required by Section 13 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 17 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

12/13/2017 01:23:57 PM                    MTG  BK 14454    PG 01804                    MONTCO

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in
this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                              _____
                              -Witness                                        -Witness

_____ (Seal)                       _____ (Seal)
DOREEN D WORKMAN        -Borrower                                             -Borrower

Commonwealth of PENNSYLVANIA

County of _Philadelphia_____

On this, the 29ᵗʰ day of November, 2017, before me, the undersigned Notary Public, personally appeared
DOREEN D. WORKMAN, satisfactorily proven, to be the person whose name is subscribed to the within instrument, and
acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANNETTE C. McWILLIAMS, Notary Public          _____
Middletown Township, Bucks County             Notary Public
My Commission Expires March 5, 2021

                                              My commission expires: 3/5/2021

Loan originator (organization): MORTGAGE ONE SOLUTI█
Loan originator (individual): PENNY ELAYNE KEATOR; N█

FHA Pennsylvania Mortgage with MERS
IDS, Inc. - 59496                    Page 18 of 19                    1/2015 (rev. 7/2016)

**Certificate of Residence**

I, _J. McWilliams_, do hereby certify that the correct address of the within-named Mortgagee is 1901 E Voorhees Street, Suite C, Danville, IL 61834, P.O. Box 2026, Flint MI 48501-2026.

Witness my hand this _19_ day of _November_, _2012_

_____
-Agent of Mortgagee

# Exhibit A

ALL THAT CERTAIN Unit of piece of land, with the buildings and improvements erected or to be erected thereon, situate in the Township of Cheltenham, County of Montgomery, Commonwealth of Pennsylvania, being a part of "Wyngate, a Planned Community", a Declaration thereof being dated 6/16/2008 and recorded 6/23/2008 in Deed Book 5697 page 643, bounded and described according to a Declaration Plat entitled "Wyngate, a Planned Community", drawn by Taylor Wiseman and Taylor Engineering/ Surveyors/ Scientists, Chalfont, Pennsylvania, as an Exhibit to the Fifth Amendment thereto the Declaration of Wyngate, a Planned Community, by the Fairways at Cedarbrook Hills, L.P., a Pennsylvania Limited Partnership, the Declarant, dated 1/17/2013 and recorded 1/25/2013 at Norristown, Pennsylvania in Deed Book 5862 page 937.

BEING Unit No. 2905 Building 29

Tax ID #Tax ID / Parcel No.

 

MTG BK 14563 PG 00139 to 00140
INSTRUMENT # : 2018053294
RECORDED DATE: 08/06/2018 03:28:42 PM



RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 2 |
|---|---|

| | | | |
|---|---|---|---|
| **Document Type:** | Mortgage Assignment | **Transaction #:** | 4057345 - 1 Doc(s) |
| **Document Date:** | 08/02/2018 | **Document Page Count:** | 1 |
| **Reference Info:** | | **Operator Id:** | dkrasley |

| | |
|---|---|
| **RETURN TO: (**Simplifile) | **PAID BY:** |
| Security Connections Inc | SECURITY CONNECTIONS INC |
| 1795 International Drive | |
| Idaho Falls, ID 83402 | |
| (208) 552-8322 | |

**\* PROPERTY DATA:**
Parcel ID #: ▮▮▮▮▮▮▮▮
Address:          323 ROSS CT

                 PA
Municipality:     Cheltenham Township (100%)
School District:  Cheltenham

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 14454 PG 01786

| **CONSIDERATION/SECURED AMT:   206097.00** | MTG BK 14563 PG 00139 to 00140 |
|---|---|
| | Recorded Date: 08/06/2018 03:28:42 PM |
| **FEES / TAXES:** | |
| Recording Fee:Mortgage | I hereby CERTIFY that this document is |
| Assignment                      $80.75 | recorded in the Recorder of Deeds Office in |
| **Total:**                      $80.75 | Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION**



PARCEL No. ████████████
**PENNSYLVANIA**
COUNTY OF **MONTGOMERY**

████████████████████████

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
31-00-17338-12-7 CHELTENHAM TOWNSHIP
323 ROSS CT
WORKMAN DOREEN D                                    $15.00
B 146A L 2905 U 081 1101 08/06/2018                HW

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. **208-528-9895**

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE ONE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS** located at **1901 E VOORHEES STREET SUITE C, DANVILLE, IL 61834** or **P.O. Box 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **PACIFIC UNION FINANCIAL, LLC** located at **1603 LBJ FREEWAY SUITE 500, FARMERS BRANCH, TX 75234**, Assignee, its successors and assigns, that certain Mortgage dated **NOVEMBER 29, 2017** executed by **DOREEN D WORKMAN, A SINGLE WOMAN,** Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE ONE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of **$206,097.00** and recorded in the Office of the Register, Recorder, or County Clerk of **MONTGOMERY** County, State of **PENNSYLVANIA**, in Book **14454** at Page **01786** as Document No. **2017093963**, more particularly described and commonly known as:

**AS DESCRIBED IN SAID MORTGAGE**
Property Address: **323 ROSS CT, WYNCOTE, PA 19095**
**TOWNSHIP OF CHELTENHAM**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.
TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.
IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **AUGUST 02, 2018**.
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE ONE SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS**

_____
**RAE DUTTON, VICE PRESIDENT**

STATE OF **IDAHO**                    COUNTY OF **BONNEVILLE**        ) ss.

On **AUGUST 02, 2018**, before me, **KAYLA SCHROEDER**, personally appeared **RAE DUTTON** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____
**KAYLA SCHROEDER (COMMISSION EXP. 06/15/2024)**
NOTARY PUBLIC

> KAYLA SCHROEDER
> Notary Public
> State of Idaho

I do hereby certify that the precise address of the Assignee Residence is:
**PACIFIC UNION FINANCIAL, LLC, 1603 LBJ FREEWAY SUITE 500, FARMERS BRANCH, TX 75234**

_____
**RAE DUTTON, VICE PRESIDENT**

████████████████

**Page 1 of 1**        MIN: ████████████
MERS PHONE: **1-888-679-6377**

Recording Requested By/Return To:
**NATIONSTAR MORTGAGE LLC**
**D/B/A MR. COOPER**
**999 TECH ROW, #200**
**MADISON HEIGHTS, MICHIGAN**
**48071**
**888-480-2432**

This Instrument Prepared By:
**NATIONSTAR MORTGAGE LLC**
**D/B/A MR. COOPER**
**8950 CYPRESS WATERS BLVD.**
**COPPELL, TX 75019**

**Parcel Identification Number: 31-00-17338-127**

———————————————— [Space Above This Line For Recording Data] ————————————————

**Document Date: 06-15-2021**

# HOME AFFORDABLE MODIFICATION AGREEMENT

**Property Address: 323 ROSS CT,**
**WYNCOTE, PENNSYLVANIA 19095**

Loan Number ███
FHA Case Number ███

This Loan Modification Agreement ("Agreement"), effective on **1ST DAY OF AUGUST, 2021,** between **DOREEN D WORKMAN** ("Borrower"), and **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER** ("Lender"), whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **NOVEMBER 29, 2017** and recorded in **RECORDED DATE : 12/13/2017 BOOK : 14454 PAGE : 01786 INSTRUMENT NUMBER : 2017093963** and (2) the Note in the original principal sum of U.S $206,097.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

————————————————— **323 ROSS CT, WYNCOTE, PENNSYLVANIA 19095** —————————————————
(Property Address)

the real property described being set forth as follows:
**LEGAL DESCRIPTION:**
**ALL THAT CERTAIN UNIT OF PIECE OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS ERECTED OR TO BE ERECTED THEREON, SITUATE IN THE TOWNSHIP OF CHELTENHAM,**

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01                                                    *(page 1 of 10)*

███████████████████████████████████████

Loan Number ▮▮▮▮▮

**COUNTY OF MONTGOMERY, COMMONWEALTH OF PENNSYLVANIA, BEING A PART OF
"WYNGATE, A PLANNED COMMUNITY", A DECLARATION THEREOF BEING DATED 6/16/2008
AND RECORDED 6/23/2008 IN DEED BOOK 5697 PAGE 643, BOUNDED AND DESCRIBED
ACCORDING TO A DECLARATION PLAT ENTITLED "WYNGATE, A PLANNED COMMUNITY",
DRAWN BY TAYLOR WISEMAN AND TAYLOR ENGINEERING/ SURVEYORS/ SCIENTISTS,
CHALFONT, PENNSYLVANIA, AS AN EXHIBIT TO THE FIFTH AMENDMENT THERETO THE
DECLARATION OF WYNGATE, A PLANNED COMMUNITY, BY THE FAIRWAYS AT
CEDARBROOK HILLS, L.P., A PENNSYLVANIA LIMITED PARTNERSHIP, THE DECLARANT,
DATED 1/17/2013 AND RECORDED 1/25/2013 AT NORRISTOWN, PENNSYLVANIA IN DEED
BOOK 5862 PAGE 937.**
Modification Effective Date: **AUGUST 01, 2021**
**Original Mortgage Amount: $206,097.00**

**Tax Parcel No.:** ▮▮▮▮▮▮

If my representations and covenants in Section 1 continue to be true in all material respects, then this
Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Security Instrument on the Property, and (2) the Promissory Note secured by the
Security Instrument ("Original Note"). The Security Instrument and Original Note together, as they may
previously have been amended, are referred to as the "Loan Documents." Except for "Subordinate
Note" and "Subordinate Security Instrument", capitalized terms used in this Agreement and not
defined have the meaning given to them in Loan Documents.

I understand that after I sign and return the Subordinate Note, Subordinate Security Instrument, and
two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.
This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

  A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the
        Loan Documents or my default is imminent, and (ii) I do not have sufficient income or
        access to sufficient liquid assets to cure the default or to make the monthly mortgage
        payments now or in the near future;
  B.    One of the borrowers signing this Agreement, the Subordinate Note, and the
        Subordinate Security Instrument lives in the Property as a principal residence, and the
        Property has not been condemned;
  C.    There has been no impermissible change in the ownership of the Property since I
        signed the Loan Documents. A permissible change would be any transfer that the
        Lender is required by law to allow, such as a transfer to add or remove a family
        member, spouse or domestic partner of the undersigned in the event of a death,
        divorce or marriage;
  D.    I have provided documentation for all income that I receive (and I understand that I
        am not required to disclose child support or alimony unless I chose to rely on such
        income when requesting to qualify for the FHA Home Affordable Modification Program
        (the "Program").

Copy

Loan Number ███████

E.    Under penalty of perjury, all documents and information I have provided to Lender in
connection with this Agreement, including the documents and information regarding
my eligibility for the Program, are true and correct;

F.    If Lender requires me to obtain credit counseling in connection with the Program, I will
do so; and

G.    I have made or will make all payments required under a trial period plan.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge
that:

A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines
that any of my representations in Section 1 are no longer true and correct or any
covenant in Section 1 has not been performed, the Loan Documents will not be modified,
this Agreement will terminate, and the Subordinate Note and Subordinate Security
Instrument will not be in effect. In that event, the Lender will have all of the rights and
remedies provided by the Loan Documents; and

B.    I understand that the Loan Documents will not be modified unless and until (i) the Lender
accepts this Agreement by signing and returning a copy of it to me, and (ii) the
Modification Effective Date (as defined in Section 3) has occurred. I further understand
and agree that the Lender will not be obligated or bound to make any modification of the
Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.    **The Modification.** If my representations and covenants in Section 1 continue to be true in all
material respects and all preconditions to the modification set forth in Section 2 have been
met, the Loan Documents will automatically become modified on **AUGUST 01, 2021** (the
"Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I
understand that if I have failed to make any payments as a precondition to this modification
under a trial period plan, this modification will not take effect. The first modified payment will
be due on **AUGUST 01, 2021.**

A.    The Maturity Date will be: **JULY 01, 2051.**

B.    The current Total Outstanding Balance of my loan includes all unpaid principal and
amounts that will be past due as of the Modification Effective Date. The current Total
Outstanding Balance of my Original Note includes unpaid principal, unpaid and deferred
interest, escrow advances and other costs, but excludes unpaid late charges, and is less
any amounts paid to the Lender but not previously credited to my Loan. The current Total
Outstanding Balance of my loan is **$196,673.85.**

C.    The Total Outstanding Balance will be reduced by **$49,891.98.** This amount will be
included in a new, non-interest bearing Subordinate Note ("Subordinate Note"), payable to
HUD, and will not be due until the Original Note is paid off, matures, or I sell the property,
whichever is earliest.

D.    The Total Outstanding Balance less the amount of the Subordinate Note, or **$146,781.87,**
will be the New Principal Balance of my Original Note. Interest at the rate of **2.8750%** will

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

*(page 3 of 10)*

Copy

Loan Number ███████

begin to accrue on the New Principal Balance as of **AUGUST 01, 2021** and the first new monthly payment on the New Principal Balance will be due on **AUGUST 01, 2021**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 30 | 2.8750% | 07-01-2021 | $815.99 | $1,022.11, may adjust periodically | $1,838.10, may adjust periodically | 08-01-2021 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.D. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate or for a graduated or growing-equity payment schedule.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

E. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

F. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.D.

G. I agree to pay in full the Subordinate Note and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay all amounts due and owing under the Original Note, including any subsequent modifications to the Original Note, or (iii) the new Maturity Date set forth in Section 3.A above.

4.   **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, the Subordinate Note, and the Subordinate Security Instrument, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-

Copy

**Loan Number** ████████

borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement, the Subordinate Note, and the Subordinate Security Instrument shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, the Subordinate Note, and the Subordinate Security Instrument, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed. The Loan Documents constitute a first lien on the Property and are in no way prejudiced by this Agreement.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, the Subordinate Note, and the Subordinate Security Instrument, remain in full force and effect; nothing in this Agreement or the Subordinate Note, or the Subordinate Security Instrument shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Subordinate Note, and the Subordinate Security Instrument, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That the mortgage insurance premiums on my loan may increase and the date on which I may request cancellation of mortgage insurance may change as a result of this loan modification.

91003004v2.9
Rev. 10/16
Version  06_10_2021_21_29_01                                                                  *(page 5 of 10)*

Copy

Loan Number ████

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Subordinate Security Instrument. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Gam St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Original Note or in any addendum or amendment to the Original Note allowed for the assessment of a penalty for full or partial prepayment of the Original Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That, if any foreclosure action against me is dismissed as a result of entering into this Agreement, I will remain liable for and bear my own attorney fees and costs incurred in connection with such action, if permitted by applicable law.

M. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the FHA Home Affordable Modification Program.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

Copy

Loan Number ███████

execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

5.  If I have been granted a discharge in bankruptcy with respect to the Original Note and Security Instrument prior to the execution of this Agreement nothing in this Agreement shall be construed to be an attempt to collect any discharged debt against me personally or an attempt to revive personal liability. However, I acknowledge that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of my default thereunder.

6.  If I am a Debtor in an active bankruptcy proceeding, I understand that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If Court and/or Bankruptcy Trustee approval of the loan modification agreement is required, the loan modification agreement will not be effective unless evidence of the required approval is provided.

**(SIGNATURES CONTINUE ON FOLLOWING PAGES)**

Copy

Loan Number ██████

In Witness Whereof, the Borrower(s) have executed this agreement.

*Doreen D. Workman*          Execution Date: 6, 17, 2021

Borrower -  **DOREEN D WORKMAN**

State of **PENNSYLVANIA** ,
County of _Philadelphia_
      **Enter County Here**

On this, the ___17th___ day of ___June_____, ___2021___, before me,
the undersigned officer, personally appeared **DOREEN D WORKMAN**, known to me (or satisfactorily proven) to
be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they
executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

Place Seal Below

_Patricia A Ireland_
                  **Notary Signature**

_Patricia A Ireland_
                  **Notary Printed Name**

Title of Officer:  Notary Public

My Commission Expires:  _4·24·24_

[ ] This notarial act involved the use of communication technology.

```
Commonwealth of Pennsylvania - Notary Seal
PATRICIA A IRELAND - Notary Public
Philadelphia County
My Commission Expires Apr 24, 2024
Commission Number 1077269
```

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01                                 *(page 8 of 10)*

██████████████████████████████

Copy

Loan Number ██████

In Witness Whereof, the Lender has executed this Agreement.

Lender

**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**

By: _____

Printed Name: Bija Brown
Vice President

Title: _____

Execution Date: **JUN 2 2 2021** _____

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

*(page 9 of 10)*

████████████████████████████████

Copy

Loan Number ███████

State of MICHIGAN
County of OAKLAND

Acknowledged by _____ **Bria Brown** _____ , Vice President of Nationstar
Mortgage LLC d/b/a Mr. Cooper a Limited Liability Corporation before me on the _22nd_ day of
_____ _June_ , _2021_

Signature _____

Printed name __ **K Otto** __

Notary public, State of MICHIGAN, County of ____ Macomb __

My commission expires ____ MAY 1 6 2027 ____

Acting in the County of OAKLAND

> KOTIO
> Notary Public, State Of Michigan
> County of Macomb
> My Commission Expires May 16, 2027
> Acting in the County of OAKLAND

91003004v2.9
Rev. 10/16
Version 06_10_2021_21_29_01

*(page 10 of 10)*

## Motion For Relief Information
### Agreed Order

| | | | |
|---|---|---|---|
| Filed By: | Doreen D. Workman | Agreed Order Terms | Petition Arrearge included in P... |
| | 0 | Ongoing Payments | due on |
| Case Number | 2012737.00 | | payments @ |
| Filing Date: | 2/19/2018 | A O Payments | due from |
| AO Figures | | | payments @ |
| Payments | $5,953.38 | 8/1/2020- | payments @   $ - |
| Attorney fee | $1,031.00 | | |
| MFR cost | | | |
| Suspense | $934.86 | $6,049.52 | |

| Date | Amount Received | Applied To | Post Petition Amount Due | Cure payment | Post Suspense Balance | Comments | Payment Applied (P&I and Escrow) | Additional Escrow Applied | Fees/Costs/Corp | Payment Suspense | LSAM BR Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | $ - | | | | | $ - | $ - |
| | | | | | $ - | | | | | $ - | $ - |
| | | | | | $ - | | | | | $ - | $ - |
| | | | | | $ - | | | | | $ - | $ - |
| 07/06/20 | $ 506.46 | | | | $ 506.46 | | | | | $ 506.46 | $ 506.46 |
| 07/31/20 | $ 700.00 | | | | $ 1,206.46 | | | | | $ 700.00 | $ 1,206.46 |
| 09/09/20 | $ 300.00 | | | | $ 1,506.46 | | | | | $ 300.00 | $ 1,506.46 |
| 09/25/20 | $ 706.46 | 07/01/20 | $ 1,984.46 | | $ 228.46 | | | | | $ 706.46 | $ 2,212.92 |
| 09/29/20 | | | | | $ 228.46 | | | | $1,984.46 | $ (1,984.46) | $ 228.46 |
| 10/12/20 | $ 706.40 | | | | $ 934.86 | | | | | $ 706.40 | $ 934.86 |
| | | Agreed order entered | | | $ 934.86 | | | | | $ - | $ 934.86 |
| 10/27/20 | $ 2,006.46 | 11/01/20 | $ 1,984.46 | | $ 956.86 | | | | | $ 2,006.46 | $ 2,941.32 |
| 10/29/20 | $ 398.92 | | | | $ 1,355.78 | | | | $1,984.46 | $ (1,585.54) | $ 1,355.78 |
| 10/29/20 | $ 50.00 | | | | $ 1,405.78 | | | | | $ 50.00 | $ 1,405.78 |
| 11/17/20 | $ 6,049.52 | 12/01/20 | $ 1,984.46 | | $ 5,470.84 | | | | | $ 6,049.52 | $ 7,455.30 |
| 11/18/20 | | 01/01/21 | $ 1,984.46 | | $ 3,486.38 | | $ 2,014.68 | | | $ (2,014.68) | $ 5,440.62 |
| 11/18/20 | | 02/01/21 | $ 1,984.46 | | $ 1,501.92 | | $ 2,014.68 | | | $ (2,014.68) | $ 3,425.94 |
| 11/18/20 | | | | | $ 1,501.92 | | $ 2,014.68 | | | $ (2,014.68) | $ 1,411.26 |
| 12/10/20 | $ 401.46 | | | | $ 1,903.38 | | | | | $ 401.46 | $ 1,812.72 |
| 12/30/20 | $ 500.00 | 03/01/21 | $ 1,984.46 | | $ 418.92 | | | | | $ 500.00 | $ 2,312.72 |
| 01/29/21 | $ 189.46 | | | | $ 608.38 | | | | | $ 189.46 | $ 2,502.18 |
| 03/17/21 | $ 438.10 | | | | $ 1,046.48 | | | | | $ 438.10 | $ 2,940.28 |
| 03/19/21 | $ 1,400.00 | 04/01/21 | $ 1,984.46 | | $ 462.02 | | | | | $ 1,400.00 | $ 4,340.28 |
| 03/19/21 | | | | | $ 462.02 | | $ 2,014.68 | | | $ (2,014.68) | $ 2,325.60 |
| 04/30/21 | $ 1,838.10 | | | | $ 2,300.12 | | | | | $ 1,838.10 | $ 4,163.70 |
| 04/30/21 | | 05/01/21 | $ 1,984.46 | | $ 315.66 | | $ 2,014.68 | | | $ (2,014.68) | $ 2,149.02 |
| 05/26/21 | $ 95.00 | | | | $ 410.66 | | | | | $ 95.00 | $ 2,244.02 |
| 05/28/21 | $ 1,838.10 | 06/01/21 | $ 1,984.46 | | $ 264.30 | | | | | $ 1,838.10 | $ 4,082.12 |
| 05/28/21 | | | | | $ 264.30 | | $ 2,014.68 | | | $ (2,014.68) | $ 2,067.44 |
| 05/28/21 | $ (95.00) | | | | $ 169.30 | | | | | $ (95.00) | $ 1,972.44 |
| 06/21/21 | $ (750.40) | | | | $ (581.10) | | | | | $ (750.40) | $ 1,222.04 |
| 06/21/21 | $ 26,693.31 | | | | $ 26,112.21 | | $ 26,693.31 | | | $ - | $ 1,222.04 |
| 06/21/21 | $ 6,842.22 | | $ 6,842.22 | | $ 26,112.21 | Prn/Int Payment | $ 6,842.22 | | | $ - | $ 1,222.04 |
| | $ 1,386.54 | | | | $ 27,498.75 | | | | | $ 1,386.54 | $ 2,608.58 |
| | | Loan Mod Enteed and Next due 8/1/2021 | | | $ 2,608.58 | | | | | $ - | $ 2,608.58 |
| 07/01/21 | | 08/01/21 | $ 1,722.94 | | $ 885.64 | | | | | $ - | $ 2,608.58 |
| 08/30/21 | $3,033.66 | | | | $ 3,919.30 | | | | | $ 3,033.66 | $ 5,642.24 |
| 08/30/21 | | 09/01/21 | $ 1,722.94 | | $ 2,196.36 | | $1,722.94 | | | $ (1,722.94) | $ 3,919.30 |
| 08/30/21 | | | | | $ 2,196.36 | | $1,722.94 | | | $ (1,722.94) | $ 2,196.36 |
| 08/30/21 | | 10/01/21 | $ 1,722.94 | | $ 473.42 | | $1,722.94 | | | $ (1,722.94) | $ 473.42 |
| 01/21/22 | $153.66 | | | | $ 627.08 | | | | | $ 153.66 | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |
| | | | | | $ 627.08 | | | | | $ - | $ 627.08 |